# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DIANE M. TRAHANAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-11192 |
| | ) | |
| NORTHWESTERN UNIVERSITY and | ) | Judge John J. Tharp, Jr. |
| STEVEN J. SCHWULST, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Diane Trahanas alleges that she was subjected to discriminatory harassment under multiple statutes and retaliated against (among other claims) during her three year employment at Northwestern University. Several of her claims are facially deficient, but others survive the defendants' motion to dismiss. Therefore, the motion is granted in part and denied in part as set forth below.

## BACKGROUND

Plaintiff Diane Trahanas has sued her former employer, Northwestern University, and her former supervisor, Steven Schwulst, for violations of the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964, and the Family Medical Leave Act (FMLA).[1] At the motion to dismiss stage, all well-pleaded factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

---

[1] The claims under the ADA and Title VII are brought asserted against Northwestern only, as only an "employer" may be liable under those statutes. *See Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999). With that understanding, this opinion will not further distinguish between the defendants in terms of the causes of action or defenses and arguments in support of dismissal that have been asserted and will simply refer to "Northwestern."

Trahanas was hired by Northwestern in June 2012 to work as a research technician under Dr. Steven Schwulst. First Am. Compl. ("Compl.") ¶ 12. Trahanas served as a "technical expert or specialist" in her research lab, established and optimized experimental protocols, and coordinated the conduct of various complex experiments. *Id*. at ¶ 18. She also helped conduct the experiments, such as by collecting blood and tissue samples, and analyzed their results. *Id*. Although many of her colleagues worked only eight hour days, Trahanas was "usually" alone in the lab conducting twenty-four hour experiments. *Id*. at ¶ 22.

Trahanas has suffered from anxiety, depression, and ADHD since 2007 (long before she started working at Northwestern). Compl. ¶ 6-7. She has been under a psychiatrist's care since her diagnosis and, since 2012, she has taken psychotropic medication. *Id*. at ¶ 9-10. In 2012 or 2013,[2] Trahanas told Schwulst about her disability and requested that her work hours be reduced as an accommodation. *Id*. at ¶ 27. According to the complaint, Schwulst "failed to accommodate her disability and request for consideration," presumably meaning he did not reduce her hours. *Id*. at ¶ 28.

Following the disclosure of her disability and request for accommodation, Schwulst began to "mock and ridicule Plaintiff in front of her coworkers because she could not maintain the work schedule he was imposing." Compl. ¶ 29. In her response, Trahanas asserts this harassment happened on a daily basis. *See* Resp. at 6, ECF No. 31. Some of the comments related directly to Trahanas's work schedule and request for reduced hours, such as calling her a "Princess" and stating she was "spoiled." Compl. ¶ 31. Schwulst also disclosed information

---

[2] The complaint states that the harassment started after Trahanas told Schwulst about her disability and later references that this commenced "in Plaintiff's first year of employment," so the reasonable inference is the discussion about her disability took place within a year of June 2012. *See* Compl. ¶ 35.

about Trahanas's disability to her coworkers (although exactly what information is not clear from the complaint, other than that she had asked him to not share information about her health). *Id*. at ¶ 40-41. Schwulst merely laughed when coworkers told Trahanas to "take your meds" and regularly told coworkers that she "always make[s] mistakes." *Id*. at ¶ 47-54. Neither Schwulst nor her coworkers were disciplined even when the remarks were made in front of Schwulst's supervisor (Dr. Perlman). *Id*. at ¶ 58-59. Trahanas's coworkers were also not disciplined when they intentionally gave her an outdated protocol that made an experiment much more difficult. *Id*. at ¶ 60-64.

Schwulst also apparently believed Trahanas was a lesbian, regularly calling her one in front of her coworkers, calling her a "softball player" because "all softball players are lesbians," asserting all basketball players are lesbians, and calling her "manly." *Id*. at ¶ 31-38. He also stated that he hoped his daughter would be like Trahanas so that he would not have to worry about her getting pregnant. *Id*. at ¶ 39. These comments made Trahanas visibly uncomfortable, causing her to turn away or make a face. *Id*. at ¶ 35.

Trahanas was interested in applying to medical school and alleges (apparently notwithstanding Schwult's alleged routine sexual harassment) that on October 14, 2014, Schwulst wrote her a glowing letter of recommendation which gave her the "highest possible recommendation for admission to medical school." *Id*. at ¶ 23. She also received a very positive letter from Dr. Perlman. *Id*. at ¶ 25. Both doctors reviewed their letters of recommendation with Trahanas before uploading them to the medical school application service. *Id*. at ¶¶ 24, 26.

At some point thereafter, Trahanas began feeling "fatigued, tense, sluggish, depressed and overwhelmed" because of the harassment and her work schedule.[3] Compl. ¶ 65. She explained to her psychiatrist that she was "experiencing insomnia, anxiety, panic attacks, and depression in the work place and was contemplating hurting herself." *Id.* at ¶ 66. Following the advice of her psychiatrist, Trahanas applied for leave under the FMLA, which she was granted. *Id.* at ¶ 68-70. Trahanas began her 12 weeks of FMLA leave on February 17, 2015. *Id.* at ¶¶ 71, 73.

The following day, Trahanas was locked out of her work computer. *Id.* at ¶ 77. Trahanas needed access to her work computer in order to answer questions that had been sent to her by the manager of professional affairs at Northwestern. *Id.* at ¶ 78-79. Trahanas and Schwulst were the only people that had her username and password, and according to a Northwestern HR representative Trahanas should have been able to access her computer during leave. *Id.* at ¶ 81-83. Trahanas, however, was never able to access her work computer again. *Id.* at ¶ 85.

On February 19, 2015, two days after she began FMLA leave and the same day she reported her computer problems, Trahanas received a notification that Schwulst had uploaded a new letter to her medical school application. Compl. ¶ 86. Trahanas notified Northwestern HR and the manager of professional affairs in her department. *Id.* at ¶ 87. Northwestern advised Trahanas to ask Schwulst if he knew anything about the new letter and warned her not to accuse him of wrongdoing so he did not "get mad again and start hollering." *Id.* at ¶ 88-90. Trahanas emailed Schwulst and received no reply. *Id.* at ¶ 91-92. Trahanas asked Northwestern HR to look

---

[3] The allegations suggest this was around 2015, as the complaint suggests she applied for leave shortly after discussing the problems with her psychiatrist (who was already treating her). *See* Compl. ¶ 68-70.

into the new letter and they assured her they would, but she never received any further responses from them or Schwulst despite repeated calls and emails. *Id*. at ¶ 92-100.

Schwulst apparently uploaded a third letter to Trahanas's medical school application on February 26, 2015. Compl. ¶ 97. Plaintiff asserts, on information and belief, that the later letters were "not good" and "besmirched her professional reputation and competence, and foreclosed her enrollment in medical school." *Id*. at ¶ 101. On February 27, 2015, Trahanas hired a lawyer and the attorney demanded Schwulst turn over a copy of the second recommendation letter. *Id*. at ¶ 103. Schwulst refused and threated a countersuit. *Id*. at ¶ 104.

At the end of her FMLA leave, Trahanas's psychiatrist stated she could go back to work at Northwestern as long as she was not supervised by Schwulst or placed in the "hostile work environment he had fostered." Compl. ¶ 74. It is not clear whether Trahanas attempted to go back to work, although she alleges that she has not been able to secure "another position of employment at Northwestern University." *Id*. at ¶ 133. Trahanas filed an EEOC charge on September 24, 2015 and received a right to sue letter on September 29, 2015. *Id*. at ¶ 105. She filed this lawsuit on December 11, 2015.

## DISCUSSION

Trahanas's complaint includes six counts. The first alleges that she was subject to a hostile work environment and discrimination in violation of the ADA and Title VII. The second alleges retaliation under the ADA, Title VII, and the FMLA. Third, she alleges interference with exercising her rights under the ADA and FMLA. Fourth, she alleges intentional interference with prospective economic advantage. Fifth, she alleges defamation. Sixth, she alleges intentional infliction of emotional distress. Northwestern and Schwulst have moved to dismiss all the claims

against them. For the reasons stated below, the motion to dismiss is granted in part and denied in part.

As an initial matter, the Court wishes to address the general thrust of Trahanas's response to the motion, which can be summarized with the following quotation: "If this Honorable Court rules that the elements of each claim must be specifically pled, Plaintiff's counsel requests leave to file a Second Amended Complaint to meet that requirement." Resp. at 11. The Court acknowledges that a complaint need not plead legal theories. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). It is axiomatic, however, that a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, although a plaintiff need not identify the legal theories by which she asserts a right to recovery, much less expressly lay out the elements of each claim, she must in fact provide sufficient facts to demonstrate a plausible basis to believe that she has a legal claim. Furthermore, when an attorney responds to a motion to dismiss, the Court expects that the attorney will respond with legal citations and legal argument rather than a mere recitation of the complaint. A party runs the risk of wavier where it "fails to develop arguments related to a discrete issue" or "effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." *Alioto*, 651 F.3d at 721. In the future, the Court will hold Trahanas and her counsel to a stricter waiver standard than the Court has applied in resolving the current motion.

**I. Hostile Work Environment and Discrimination**

Trahanas alleges a hostile work environment and discrimination in violation of the ADA and Title VII. Northwestern initially argues that Trahanas has not alleged she is disabled under

the ADA and thus cannot claim its protections.[4] To prevail on a claim of disability discrimination, the plaintiff must show she is (1) disabled under the Americans with Disabilities Act ("ADA"), (2) qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability. *See EEOC v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008).

A plaintiff must allege sufficient facts to plausibly show that she is a qualified individual under the ADA. *See Gogos v. AMS Mechanical Systems*, 737 F.3d 1170, 1172 (7th Cir. 2013). A person is "disabled" within the meaning of the ADA when she has "a physical or mental impairment that substantially limits one or more of [her] major life activities," a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

The complaint clearly alleges that Trahanas suffers from a variety of mental health issues. To state an ADA claim, however, it is not enough merely to allege a physical or mental injury or problem; there must be some plausible allegation to support an inference that the problem or condition substantially limits a major life activity. Trahanas's complaint falls short in this regard, as it fails to allege that she is substantially limited in any life activity. *See Gogos*, 737 F.3d at 1173 ("the relevant issue is whether, despite their short duration in this case, Gogos's higher-than-usual blood pressure and vision loss substantially impaired a major life activity when they

---

[4] The Seventh Circuit has repeatedly declined to decide whether or not a hostile work environment claim is ever cognizable under the ADA. *See Holyfield-Cooper v. Bd. of Educ. of Chi.*, 604 F. App'x 504, 508 (7th Cir. 2015); *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009). The Court assumes, as the Seventh Circuit has, that such a claim could exist, although as pleaded here it is not viable.

occurred"). Her brief is of no help; it fails to address this requirement at all. Trahanas argues that she is sufficiently disabled merely because she takes psychotropic medication and is under the care of a psychiatrist. *See* Resp. at 2. This information, however, does not provide the Court with sufficient information to determine whether she plausibly was substantially limited in any major life activities. In fact, according to the October 2014 letters from Schwulst and Perlman, her work was exemplary; far from supporting her ADA claim, these letters undermine the claim by rebutting any inference that her mental health was substantially limiting. The same is true of the arguments in her brief to the effect that her performance far exceeded Northwestern's requirements.

Trahanas's ADA discrimination claim also suffers from another deficiency: she has not alleged any adverse employment action that took place after she requested to take leave. *See* Compl. ¶ 66-68. Trahanas was granted the leave she requested and does not allege that Northwestern refused to allow her to return; rather, she says only that at the end of her leave her doctor cleared her to return to work (for someone other than Schwulst) and that she was locked out of her work computer permanently. *Id*. at ¶¶ 74, 85. She also alleges that she has been "unable to secure placement in medical school or another position of employment at Northwestern." *Id*. at ¶ 133. None of this, however, indicates that Trahanas actually attempted to return to her job after her leave was up. Did she even request to return to work with a change of supervisor? The complaint does not say. Thus, she has failed to allege an adverse employment outcome even if it is assumed that she had an ADA-qualifying disability. Furthermore, to the extent that the complaint can be read to imply Trahanas has attempted to return and been denied a job at Northwestern, she has not alleged that Northwestern refused to rehire her because of her

disability. *See Serwatka v. Rockwell Automation, Inc.,* 591 F.3d 957, 962 (7th Cir. 2010) (but for causation required). For these reasons, Trahanas's ADA claims fall short.

Trahanas's Title VII discrimination claim fares better. The claim is predicated on Schwulz's comments about Trahanas's perceived sexual orientation. Northwestern initially argues that the Title VII claims must be dismissed because sexual orientation is not protected under Title VII. Since this motion was briefed, however, the Seventh Circuit declared *en banc* that sexual orientation discrimination is protected by Title VII. *Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339, 351-52 (7th Cir. 2017). That argument, therefore, is no longer viable.

Northwestern also asserts that the harassment Trahanas endured was not severe or pervasive enough to constitute a hostile work environment. Northwestern is correct that a hostile work environment must be "both subjectively and objectively so severe or pervasive that it alters the conditions of the plaintiff's employment" to constitute a violation of Title VII. *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010). And it is also correct that the alleged insults and comments by Schwulst about the quality of Trahanas's work provide no support for her claim of harassment based on her perceived sexual orientation. But its cursory dismissal of Trahanas's allegations concerning the alleged derisive remarks about her sexual orientation as simply "an undisclosed number of innocuous comments" is grossly off the mark.

As to pervasiveness, Trahanas suggested in her response that the harassment occurred daily. *See Pierce v. Ill. Dep't of Human Servs.*, 128 F. App'x 534, 538 (7th Cir. 2005) (supplemental allegations in a motion to dismiss can be considered as long as they are consistent with the complaint). When assessing a hostile work claim, the Seventh Circuit looks to "all the surrounding circumstances, including the frequency of the harassing conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether

the conduct unreasonably interfered with the employee's work performance." *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002). Here, Trahanas has alleged that she was subjected to remarks about her (perceived) sexual orientation daily, including in front of coworkers.

As to the nature of the comments themselves, although none of those remarks were physically threatening, remarks about sexual orientation certainly have the capacity to offend, humiliate, and intimidate their targets. *See, e.g, Bowe v. Eau Claire Area Sch. Dist.*, No. 16-CV-746-JDP, 2017 WL 1458822, at *3 (W.D. Wis. Apr. 24, 2017) (student being called "faggot" and "gay" sufficient to state harassment claim). And though the comments must be objectively offensive, the fact that they are alleged to have had a severe impact on Trahanas provides some additional evidence of the offensive nature of the comments. Drawing the inferences in her favor, Schwulst's frequent derogatory remarks about Trahanas's sexual orientation are adequate to plausibly state a claim for a hostile work environment at the motion to dismiss stage. *See Gabrielle M. v. Park Forest-Chicago Heights*, 315 F.3d 817, 822 (7th Cir. 2003) ("Whether behavior is so severe, pervasive, and offensive as to create a cause of action. . . is a fact-specific inquiry."); *Williams v. Baltimore Cty., Maryland*, No. CV ELH-13-03445, 2016 WL 3745980, at *23 (D. Md. Mar. 11, 2016) ("Whether particular incidents of harassment were sufficiently severe or pervasive is quintessentially a question of fact."). Thus, the Court denies the motion to dismiss as to Trahanas's Title VII hostile work environment discrimination claim.

**II. Retaliation**

Next, Trahanas alleges that she was retaliated against for exercising her rights under the ADA, Title VII, and the FMLA. Under any of the three statutes, Trahanas states a claim if she 1) engaged in statutorily protected activity, 2) suffered an adverse action, and 3) the protected

activity caused the adverse action. *See Ames v. Home depot U.S.A., Inc.,* 629 F.3d 665, 670 (7th Cir. 2011) (FMLA retaliation elements); 42 U.S.C. § 2000e–3(a) (Title VII statutory retaliation bar); *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008) (Title VII retaliation elements); 42 U.S.C. § 12203(a) (ADA statutory retaliation bar); *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522,* 657 F.3d 595, 601 (7th Cir. 2011) (ADA retaliation elements).

Northwestern initially argues that Trahanas engaged in no protected activity under Title VII. Title VII protects anyone from retaliation for opposing "any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Trahanas, however, does not appear to have ever complained about the treatment based on her perceived sexual orientation to her superiors or human resources. In fact, the complaint does not even allege that she ever asked Schwulst or her coworkers to stop making the comments (she just turned away or made an uncomfortable face). Thus, the complaint provides no basis from which to infer that Trahanas engaged in any protected activity that would give rise to a retaliation claim. Trahanas argues that she is not required to include fact allegations concerning the retaliatory conduct, but even under the particularly lenient standards applicable to employment discrimination claims, a plaintiff must at least identify the protected activity in which she claims to have engaged. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) ("failure to mention any type of protected activity" prevents retaliation claim). Trahanas's complaint fails to do so and, accordingly, the motion to dismiss her Title VII retaliation claim is granted.

Northwestern also argues that the ADA and FMLA retaliation claims should be dismissed for failure to identify an adverse action. Trahanas alleges two potential adverse actions: being

11

locked out of her work computer and the uploading of the negative recommendation to her medical school application. An action is sufficiently adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kaplan v. New Trier High Sch.*, No. 11 C 981, 2011 WL 2148936, at *4 (N.D. Ill. May 31, 2011) (citing *Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53 (2006)).

Neither side cites any case law for whether or not a negative recommendation to graduate school can constitute an adverse action. Courts have, however, found that recommending non-renewal of a teaching contract is a materially adverse action, as is refusing to provide a positive reference after termination. *Edwards v. Gwinnett Cty. Sch. Dist.*, 977 F. Supp. 2d 1322, 1333 (N.D. Ga. 2013) (recommendation of non-renewal); *Reed v. Unified Sch. Dist. No. 233*, 299 F. Supp. 2d 1215, 1225 (D. Kan. 2004) (refusal to provide plaintiff with a recommendation). Although being locked out of a work computer is likely a minimal inconvenience (and here Trahanas was locked out only after she went on leave), a negative letter to a medical school admissions committee might well be sufficient to dissuade a worker from trying to take leave or ask for an accommodation for her disability.

Northwestern contends that clearly these actions were not adverse because Trahanas immediately complained to HR. As an initial matter, that gets the timeline wrong. Trahanas asserts that she requested an ADA accommodation (the reduced schedule) and later asked to go on FMLA leave. Two days after she went on FMLA leave (that is to say, *after* she took the statutorily protected action), Schwulst allegedly retaliated by uploading the negative letter. Trahanas then immediately contacted HR in an attempt to undo the adverse action. More significantly, just as filing this suit does not reflect that Trahanas was undeterred by the retaliation, trying to otherwise undo retaliation does not necessarily mean the plaintiff would not

12

have been deterred from taking the protected action if she knew what would happen next. Therefore, the Court denies the motion to dismiss the FMLA and ADA retaliation claims.

**III. Interference with ADA and FMLA Rights**

Next, Trahanas alleges interference with exercising her rights under the ADA and FMLA. The count itself, however, appears merely to re-allege that she was retaliated against for seeking to use her rights or was not accommodated. To the extent Trahanas claims a failure to accommodate under the ADA or retaliation under either statute, those claims have already been discussed above (the ADA discrimination claim is dismissed but the ADA and FMLA retaliation claims survive). To prevail on an FMLA interference claim, Trahanas must show that "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 761 (7th Cir. 2008). Here, Trahanas was provided all the FMLA benefits she requested. Although firing an individual to prevent them from returning can constitute FMLA interference, *Goelzer v. Sheboygan County*, 604 F.3d 987, 993 (7th Cir. 2010), Trahanas has not alleged that she was fired or that she attempted to return to her prior position. The fact that Trahanas has not been able to secure a ***different*** position at Northwestern doesn't matter, her only entitlement is to the job she had before she took her leave. *Id*. Therefore, she has not stated a claim for interference with her FMLA rights. The motion to dismiss is granted as to the inference with FMLA rights.

**IV. Intentional Interference with Prospective Economic Advantage**

Trahanas further claims that the defendants intentionally interfered with her prospective economic advantage because she had a reasonable expectation of continued employment at

Northwestern and a reasonable expectation of acceptance into medical school following the positive letters of recommendation. *See* Compl. ¶ 129-131. To state a claim for tortious inference, Trahanas must allege: "(1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007). Although a person can have a reasonable expectation in continuing their employment, the tortfeasor cannot be a supervisor or the employer – it must be a third party interfering with a relationship. *See id*. at 945-46; *see also Emery v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 02 C 9303, 2003 WL 22176077, at *9 (N.D. Ill. Sept. 18, 2003) ("A party cannot tortiously interfere with its own business relationship."). Thus, the intentional interference claim must be dismissed as to Trahanas's expectation of continued employment at Northwestern.

Whether interfering with a medical school application constitutes intentional interference appears to be an issue of first impression. The Court sees no reason why admission to graduate school should be *per se* exempt from prospective economic advantage (it is, after all, essentially a contract for services). The Seventh Circuit, however, has distinguished a "hope" of receiving a contract or job, which is not actionable, from a reasonable expectation of a future relationship. *Fredrick v. Simmons Airlines*, 144 F.3d 500, 503 (7th Cir. 1998). In *Fredrick*, the Seventh Circuit noted that the plaintiff did "not claim that he had been offered a job by any other airline, or even that he had interviewed or applied for such positions." *Id*. The Illinois Supreme Court has rejected a claim for intentional interference when the plaintiff had applied for a job, completed some interviews, was the "leading candidate" for the position, and was going to be recommended by her interviewers before the interference. *Anderson v. Vanden Dorpel*, 667

N.E.2d 1296, 1299-300 (Ill. Sup. Ct.1996). The court noted that "favorable comments" did not give rise to a legally protectable expectancy. *Id*. at 1300.

Here, the situation is similar: Trahanas had received favorable comments from her recommenders, but was by no means assured admission to medical school on that basis. Moreover, she has not alleged that she received *any* positive indicator of interest from any of the medical schools to which she applied. *Compare McGreal v. Vill. of Orland Park,* No. 12 C 5135, 2013 WL 3984477, at *10 (N.D. Ill. Aug. 2, 2013) ("McGreal has alleged that he was ranked first on the Village of Mokena's eligibility list for police officers at a time when there was an opening and that he was not hired because of defendants' actions."); *O'Driscoll v. Argosy Univ.*, No. 12 C 10164, 2014 WL 714023, at *4 (N.D. Ill. Feb. 25, 2014) ("Plaintiff alleges that two other prospective employers informed her that when they checked her credentials, Argosy told them that Plaintiff had never attended the University."). A plaintiff, who for example had stellar credentials and had interviewed or been offered a spot at a medical school before the retaliatory conduct could perhaps claim intentional interference. This is not that case. Therefore, the motion to dismiss is granted as to the intentional interference with prospective economic advantage claim.

**V. Defamation**

Trahanas further alleges that Northwestern defamed her when Schwulst wrote the negative reference letters and Northwestern failed to take corrective action to remedy the situation. A defamation claim requires that "(1) the defendant made a false statement about the plaintiff, (2) there was an unprivileged publication of a defamatory statement to a third party with fault by the defendant, and (3) the publication damaged the plaintiff." *McDermott v. Continal/Midland, Inc.,* No. 02 C 8063, 2003 WL 223440, at *3 (N.D. Ill. Jan. 31, 2003).

Northwestern correctly points out that Trahanas has not alleged that anything in the negative letter was false, only that the letters themselves were not good.

Furthermore, to constitute defamation the letters must have contained false statements of *fact* rather than opinion. *See Toyos v. Nw. Univ.*, No. 01 C 5407, 2002 WL 252731, at *3 (N.D. Ill. Feb. 21, 2002); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). If the defamation claims arises from the employer-employee relationship, the plaintiff must plead actual malice under Illinois law. *Krasinski v. United Parcel Service, Inc.*, 124 Ill. 2d 483, 490, 530 N.E.2d 468, 471 (1988). Actual malice means "the statement was made with knowledge of its falsity or in reckless disregard of whether it was true or false." *Id.* Here, Trahanas has made no allegation of actual malice and there is no doubt the claims arose from an employer-employee relationship.

Rather than confront these arguments, Trahanas argues that she requires discovery to access the letter. But she has stated no law for the proposition that a plaintiff need not plead the essential elements of a defamation claim (such as falsity or malice) simply because she has not seen the allegedly defamatory remark firsthand. Trahanas has failed to plausibly allege a defamation claim, so the motion to dismiss is granted as to the defamation claim.

**VI. Intentional Infliction of Emotional Distress**

Northwestern argues that it cannot be held liable for common law intentional infliction of emotional distress because it is supported by the same factual allegations as her discrimination claims. *See Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 493 (7th Cir. 1997) ("Jansen's common law claim of infliction of emotional distress is supported by the identical factual allegations of her Title VII claims and is therefore pre-empted."). The Seventh Circuit, however, has since explained that "the proper inquiry [is] not whether the facts that support [a plaintiff's] intentional infliction of emotional distress claim could also have supported a discrimination

claim, but instead whether [the plaintiff] can prove the elements of intentional infliction of emotional distress independent of legal duties furnished by [antidiscrimination laws]." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006). In *Naeem*, the conduct included sexual harassment as well as "a pattern of behavior by the defendants that created impossible deadlines, set up obstacles to her performing her job, and sabotaged her work." *Id*. at 605. Here, Trahanas has alleged that she was subjected to frequent harassment, was forced to work 24 hour shifts where coworkers only worked 8 hour shifts, had an experiment sabotaged for over 6 months, was yelled at by her supervisor, and was unable to defend herself when her work was criticized. At the motion to dismiss stage, drawing all inferences in favor of the plaintiff, the Court finds this could state "extreme and outrageous" conduct that was "intended to inflict severe emotional distress," especially after Trahanas told Schwulst that she was experiencing severe anxiety. *See id*. at 604-605 ("Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that: '(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress.'"). Therefore, the motion to dismiss is denied as to the intentional infliction of emotional distress claim.

* * *

For the reasons stated above, the motion to dismiss is granted in part and denied in part. The following claims survive: Title VII hostile work environment/discrimination, ADA retaliation, FMLA retaliation, and intentional infliction of emotional distress. All other claims are dismissed without prejudice.

Dated: July 6, 2017                                      John J. Tharp, Jr.
                                                         United States District Judge