**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIANE M. TRAHANAS,<br><br>Plaintiff,<br><br>v.<br><br>NORTHWESTERN UNIVERSITY and STEVEN J. SCHWULST, M.D.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 15 C 11192<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

After this Court granted in part and denied in part his motion for summary judgment,[1] defendant Steven J. Schwulst, M.D., moved to dismiss Diane Trahanas's surviving FMLA retaliation claim for lack of Article III standing or, in the alternative, for the Court to reconsider its summary judgment opinion under Federal Rule of Civil Procedure 60(b)(6). Def.'s Mot. Dismiss or Recons., ECF No. 144. Because Trahanas has not borne her burden of establishing Article III standing and because she has not adduced evidence that she is entitled to relief authorized by the FMLA, that motion is granted. This case is dismissed for lack of subject matter jurisdiction; in the alternative, the Court now concludes that Dr. Schwulst is entitled to summary judgment on Trahanas's FMLA retaliation claim.

**BACKGROUND**[2]

On February 16, 2015, Diane Trahanas began a twelve-week period of paid FMLA leave from her position as laboratory technician in Dr. Schwulst's laboratory at Northwestern University.

---

[1] The Court granted defendant Northwestern University's motion for summary judgment in its entirety. Mem. Op. & Order, ECF No. 133.

[2] Familiarity with the evidence and facts discussed in the Court's prior ruling on summary judgment is assumed. Only facts relevant to the instant motion are set forth herein.

Trahanas requested the leave due to worsening symptoms from her previously diagnosed depression, anxiety, and ADHD. As the only two members of the Schwulst laboratory, Trahanas and Dr. Schwulst worked together closely. Their working relationship was not uniformly positive: she alleged in this litigation that Dr. Schwulst frequently made inappropriate comments about her perceived sexual orientation, and her FMLA leave was immediately preceded by a tense period between Trahanas and Dr. Schwulst regarding Trahanas's pay and job title. Trahanas was heavily involved in most, if not all, facets of the lab's operations, however, and, in the fall of 2014, Dr. Schwulst wrote Trahanas a very positive letter of recommendation to support her medical school applications based on her strong work performance.

Though Trahanas's psychiatrist documented her worsening symptoms throughout January 2015—and, in early February 2015, Trahanas's need and intent to take time off—Trahanas did not give Dr. Schwulst or the University advance notice that she was planning to take extended FMLA leave. On February 17, 2015, one day after her leave had already begun, Trahanas informed Dr. Schwulst that she was on medical leave and that she would only communicate with him through the University's human resources team while she was out of the lab. Dr. Schwulst asked human resources employees to contact Trahanas for certain information needed to keep the lab running smoothly in her absence, such as the lab computer password, the location of certain controlled substances, and the location of the cages that housed the mice used in the lab's experiments. Human resources did not receive a response from Trahanas for several days. Dr. Schwulst located the mice cages in the interim and, though there was no record of Trahanas administering clodronate injections before her leave began, believed that the mice had been injected the week prior; without any more information about where the mice stood in the lab's experimental protocol, Dr. Schwulst decided to euthanize the mice involved.

That same day, February 19, 2015, Dr. Schwulst uploaded a second reference letter to the medical school application system, AMCAS. In his new letter, Dr. Schwulst "formally withdr[e]w" his earlier, positive letter of recommendation submitted on Trahanas's behalf and wrote that he could "no longer support her candidacy for admission to medical school." Defs.' Rule 56.1(a)(3) Statement of Facts ¶ 83, ECF No. 104. Trahanas received a notification through her AMCAS account that Dr. Schwulst had uploaded a new letter to her applications and she immediately contacted a human resources employee to inquire about the letter's contents, to no avail. *Id.* On February 26, 2015, at the urging of Chris Scarpelli, the Administrator for the Department of Surgery, Dr. Schwulst uploaded a third AMCAS letter that said his second letter had been "entered in error" and that he "[stood] by the evaluation offered in the original letter of reference" submitted in October 2014. *Id.* at ¶¶ 84-85.

Trahanas took, and was paid for, twelve weeks of FMLA leave and an additional period of paid short-term disability leave, which ended on May 14, 2015. She informed the University on June 15, 2015 that she was not returning to work, and her resignation was retroactive to May 15, 2015. Trahanas was not accepted to any medical schools for 2015 matriculation; she reapplied, and was again rejected, for admission for 2018 matriculation.

On December 23, 2020, the Court granted in part and denied in part the defendants' motion for summary judgment on Trahanas's Title VII, ADA, FMLA, defamation, and IIED claims. Memo. Op. & Order, ECF No. 133. Only Trahanas's FMLA retaliation claim against Dr. Schwulst survived. *Id.* After settlement discussions were unsuccessful, defendant Schwulst filed, on April 26, 2021, the present motion to dismiss for lack of subject matter jurisdiction based on Trahanas's lack of Article III standing or, in the alternative, for the Court to reconsider its summary judgment opinion pursuant to Federal Rule of Civil Procedure 60(b)(6). Mot. Dismiss or Recons., ECF No.

144. Dr. Schwulst and Trahanas have each also filed motions to exclude the other's proposed experts from testifying at trial. *See* Dkts 143, 144, 145, 146, and 158.

**DISCUSSION**

The FMLA's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (discussing Title VII's anti-retaliation provision). Dr. Schwulst contends that Trahanas did not meet her burden on summary judgment of demonstrating that she suffered an injury in fact and that, even if she has sufficiently alleged an injury, her injuries do not entitle her to damages or any other relief under the FMLA.[3] Because a court "cannot skip the Article III subject matter jurisdiction inquiry to get to what may be an easy answer on the merits of a particular claim," the Court must analyze that issue first. *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1063 (7th Cir. 2021). That said, the Court's conclusion that Trahanas has not demonstrated that she suffered a concrete injury sufficient to provide standing necessarily means that she has also failed to state a claim for relief on the merits; she could not be entitled to relief on the merits without standing.

I. Trahanas Does Not Have Standing to Pursue Her FMLA Retaliation Claim.

As plaintiff, Trahanas bears the burden of establishing Article III standing, and her burden evolves throughout litigation process: each of the three elements of standing "must be supported

[3] Neither Dr. Schwulst nor the University raised an argument about standing or Trahanas's entitlement to relief under the FMLA in their motion for summary judgment. *See* Defs.' Memo. Supp. Summ. J. 17-22, ECF No. 105 (arguing that Trahanas did not suffer a materially adverse employment action and that she is unable to establish a causal connection between her leave and the challenged action). Nevertheless, and as Trahanas concedes, a challenge to the Court's subject matter jurisdiction can be raised at any point before trial. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006) ("The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.").

in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This means that, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice"; at the point of summary judgment, however, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment will be taken to be true." *Id.* And, if the plaintiff's claims survive summary judgment, the facts supporting Article III standing "must be 'supported adequately by the evidence adduced at trial.'" *Id.* If at any point the plaintiff fails to meet her burden, the Court does not have subject matter jurisdiction to adjudicate her claims on the merits—"if there is no Article III standing, the court is obliged to dismiss the suit." *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 747 (7th Cir. 2007).

The core of Article III's case or controversy requirement is the "familiar triad of injury in fact, causation, and redressability." *Gracia*, 986 F.3d at 1064 (internal quotation and citation omitted). A plaintiff's alleged injury must be actual, concrete, and particularized—criteria that are often satisfied by the "injuries that most often accompany employment litigation" such as "suspension, demotion, termination, [or] lost wages" or emotional injuries such as "humiliation, embarrassment, and like injuries." *Id.* (citation omitted). In multi-claim cases like Trahanas's, "a plaintiff must demonstrate standing for each claim [s]he seeks to press." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (citation omitted). "This means that, for each claim of wrongdoing alleged, a plaintiff must demonstrate, in addition to redressability, that [s]he has suffered (or is imminently threatened with) an injury that is traceable to the wrongdoing alleged in *that* particular claim." *Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 661 (7th Cir.

2015) (emphasis in original). And "[t]he fact that a plaintiff has suffered an injury that is traceable to one kind of conduct does not grant that plaintiff standing to challenge other, even related, conduct; 'standing is not dispensed in gross.'" *Id.* (citing *Davis*, 554 U.S. at 734).

Dr. Schwulst argues that evidence adduced at summary judgment regarding Trahanas's non-admission to medical school in the 2014-2015 and 2017-2018 application cycles is insufficient to confer standing. The parties agreed that nine of the medical schools Trahanas applied to for 2015 matriculation had rejected her application prior to February 19, 2015.[4] The defendants also presented subpoenaed records from the remaining six schools that invited her to submit secondary application materials. Those records indicate that Trahanas failed to submit any secondary application materials by the schools' respective deadlines, which all pre-dated February 19, 2015.[5]

---

[4] University of Central Florida College of Medicine on November 18, 2014; Central Michigan University College of Medicine on December 1, 2014; Virginia Tech Carilion School of Medicine on December 4, 2014; Quinnipiac University's Frank H. Netter School of Medicine on December 8, 2014; Western Michigan University Homer Stryker M.D. School of Medicine on December 9, 2014; Oakland University William Beaumont School of Medicine on January 5, 2015; Florida State University College of Medicine on January 6, 2015; Wayne State University School of Medicine on January 9, 2015; and Sidney Kimmel Medical College at Thomas Jefferson University on January 20, 2015. *See* Defs.' Rule 56.1(a)(3) Statement at ¶ 89; Pl.'s Resp. to Defs.' Statement of Facts ¶¶ 89, ECF No. 108-1.

[5] Florida International University Herbert Wertheim College of Medicine deemed Trahanas to have withdrawn her application as of December 16, 2014; Geisinger Commonwealth School of Medicine informed Trahanas on January 15, 2015, it would not accept her incomplete secondary application; University of Miami Miller School of Medicine rejected Trahanas after she missed the January 15, 2015, deadline; Washington University School of Medicine in St. Louis last communicated with Trahanas on January 18, 2015, regarding the submission of a secondary application, but she was not invited to interview and was deemed to have passively withdrawn her application; and the University of South Carolina School of Medicine Greenville also concluded that Trahanas passively withdrew her application as of February 12, 2015. The sixth school, Florida Atlantic University Charles E. Schmidt College of Medicine, invited Trahanas to submit her secondary application materials on December 15, 2014, but logged that she "Withdrew Before Accepted" on April 1, 2015. Defs.' Rule 56.1(a)(3) Statement at ¶ 90. (Trahanas did not present any evidence at summary judgment indicating that she submitted secondary materials to Florida Atlantic that remained under consideration at the time Dr. Schwulst's letter was withdrawn and then reinstated; rather, she responded to the defendants' evidence by stating she "d[id] not recall if she submitted secondary application materials." Pl.'s Resp. to Defs.' Statement of Facts at ¶ 90.

Trahanas also reapplied to four of the same schools in the 2017-2018 application cycle. The defendant's evidence, in the form of the deposition testimony and report of Dr. Jorge Girotti, the Associate Dean and Director of Admissions for the University of Illinois College of Medicine, establishes (because it stands unrebutted) that AMCAS does not retain letters of recommendation submitted in earlier application cycles and that medical schools only consider letters written for application cycle in which they are submitted.[6] And to the extent that there is any genuine dispute about whether schools that Trahanas reapplied to for 2018 matriculation held on to her letters from the 2014-2015 application cycle, Dr. Schwulst points to evidence that only four percent of applicants with Trahanas's undergraduate GPA and MCAT score were accepted for medical school admission in the 2015 cycle. Therefore, Dr. Schwulst argues, Trahanas has failed to establish any concrete injury caused by his withdrawal and reinstatement of the recommendation letter—whether his decision was retaliatory or motivated by ethical concerns, as he claims, his actions had no bearing on her (non-)admission to medical school in either application cycle at issue.

[6] The only refutation Trahanas offers of this evidence is her own deposition testimony: she acknowledged that AMCAS does not release old reference letters to schools in subsequent cycles, but asserted that old reference letters "stay[] in [her] file" with each school, based on conversations with individuals at the schools she applied to in 2015 and "other faculty members at other medical schools." *See* Pl.'s Resp. Opp'n Summ. J. Ex. F, Trahanas Dep. Tr. 311:10-314:15, ECF No. 108-9. She testified that the individuals she spoke to at the medical schools "asked [her] to explain in next year's cycle if [she] were to reapply to give them an explanation of why" Schwulst's letter was withdrawn and resubmitted in the last cycle. *Id.* at 315:2-5. She also cites various exhibits—the three original recommendation letters, and her emails to HR following the AMCAS notification that a new letter had been uploaded—and testimony from Dr. Girotti, pointing to a passage where Trahanas's counsel questions Dr. Girotti about a document from the Association of Medical Colleges with a table with the likelihood of admission to medical school based on an applicant's MCAT score and GPA. *Id.* Ex. N, Girotti Dep. Tr. 200:11-15, ECF No. 108-17. The relevance of this exhibits and cited passage of deposition testimony to the question of whether medical schools retain and review letters of recommendation from earlier application cycles is unclear.

The Court agrees, based on the evidence at summary judgment, that Trahanas's non-admission to medical school is not an injury-in-fact attributable to Dr. Schwulst's conduct. Trahanas adequately alleged a real, concrete injury-in-fact at the pleading stage and directly tied it to Dr. Schwulst—Trahanas described Dr. Schwulst's withdrawal of his initial letter, cited medical school employees' statements that the letter "doesn't look good," and alleged that the letter both damaged her professional reputation and "foreclosed her enrollment in medical school." Second Am. Compl. ¶ 101, ECF No. 39. *Compare Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 280 n.14 (1978) (medical school applicant's "injury—exclusion from the Medical School"—was redressable by favorable decision from the Court and therefore sufficient for Article III standing); *Ray v. Ropes & Gray LLP*, 961 F. Supp. 2d 344, 359 (D. Mass. 2013) (presuming plaintiff's standing to pursue Title VII retaliation claim based on employer's refusal to provide letters of recommendation for future employment); *see also, e.g.*, *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333, 357 n.14 (D.C. Cir. 2020) (describing courts' acknowledgement of economic and reputational harms as adequate bases for Article III standing for some types of claims). But those allegations were not supported by the evidence presented at summary judgment, at which point "repeating the conclusory allegations of a complaint is not enough." *Gracia*, 986 F.3d at 1064. To shore up her claim to Article III standing, Trahanas "had to move beyond allegations and point to evidence establishing a concrete and particularized injury." *Id.* But she failed to do so. Trahanas's application was clearly no longer under consideration at fourteen of the fifteen schools that she applied to for 2015 matriculation by the time Dr. Schwulst withdrew his letter of recommendation. To the extent that there is any ambiguity about the remaining school, Florida Atlantic University, Trahanas produced no affirmative evidence that she even submitted the requested secondary materials, let alone evidence sufficient for a fact-finder to conclude that the

materials were still under review at the time the letter was withdrawn and that the letter's withdrawal was a contributing factor to her rejection from the school. Nor does she present any evidence that any of the four schools that Trahanas reapplied to for 2018 matriculation still had access to, let alone relied on, Dr. Schwulst's 2015 letters in their consideration and eventual rejection of her updated applications. In different circumstances, an applicant's rejection from, or revoked admission to, medical school based on an employer's retaliatory actions could well suffice for Article III standing. But here, based on the timing of Dr. Schwulst's withdrawal late in the application cycle, Trahanas's otherwise weak academic qualifications, and the AMCAS policy of not including old reference letters with reapplicants' subsequent applications, Trahanas has not evinced evidence that Dr. Schwulst's alleged FMLA violation caused her complained-of injury.

Trahanas does not argue, nor does any evidence in the summary judgment record support, that she suffered any other injury due to Dr. Schwulst's conduct. Her response brief is devoid of any helpful legal argumentation or analysis. In fact, instead of meaningfully responding to the defendant's motion, Trahanas's briefing on the Article III standing question simply rehashes the factual background of the case (all of which was both familiar to the Court and irrelevant to the question of Trahanas's injuries) and argues that this Court has subject matter jurisdiction pursuant to the federal question statute, 28 U.S.C. § 1331, because Trahanas's claim arises under the FMLA. *See* Pl.'s Resp. Opp'n Mot. Dismiss 5-6, ECF No. 151 (unhelpfully informing the Court that "[t]he Judicial code gives federal courts subject-matter jurisdiction over all civil actions 'arising under' the laws of the United States" and explaining that "[t]he main statutes under which plaintiff asserts jurisdiction by this Honorable Court are all federal statutes over which the federal court have original jurisdiction"). Trahanas's response makes just one mention of the word "standing"—in the context of yet another conclusory allegation that Dr. Schwulst's actions "caused considerable

damage to Trahanas's professional standing." *Id.* at 5. That won't do. *See Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 880 (7th Cir. 2020) (emphasizing that "[i]t is not enough to say that your reputation was harmed without explaining how" and concluding that the bare allegations of reputational harm were "insufficient to confer standing"). The plaintiff is correct that subject matter jurisdiction "can never be forfeited or waived," Pl.'s Resp. Opp'n at 5, but "perfunctory or undeveloped arguments" can be—and the Court "will not scour a record to locate evidence supporting a party's legal argument." *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).[7] Trahanas has failed to meet her evidentiary burden regarding her standing to pursue the FMLA retaliation claim, and so this case must be dismissed.

[7] This is not the plaintiff's only failure to adequately develop arguments or even to attempt to meaningfully respond to substantive issues. *See, e.g.*, Memo. Op. & Order 8, ECF No. 38 ("[Trahanas's] brief is of no help; it fails to address this requirement at all."); *id.* at 12 (noting that neither side provided any case law regarding whether the provision of a negative recommendation to a graduate school can constitute an adverse action—the key issue for Trahanas's FMLA claim); *id.* at 16 ("Rather than confront these arguments, Trahanas argues that she requires discovery to access the letter. But she has stated no law for the proposition that a plaintiff need not plead the essential elements of a defamation claim (such as falsity or malice) simply because she has not seen the allegedly defamatory remark firsthand."); Memo. Op. & Order 43, ECF No. 133 ("Trahanas devotes just two paragraphs to defending her IIED claims against summary judgment, and her argument largely reiterates—without record cites or additional case law—the Court's own language from the order on the defendant's motion to dismiss the first amended complaint."). The Court has been clear with Trahanas's counsel that "the Court expects that [an] attorney will respond with legal citations and legal argument rather than a mere recitation of the complaint" to the other party's substantive briefing and that a party "runs the risk of waiver" where it fails to develop arguments or respond to alleged deficiencies in its case. Memo. Op. & Order 6, ECF No. 38. And the Court warned that it "will hold Trahanas and her counsel to a stricter waiver standard" than the Court applied in resolving the motion to dismiss. *Id.* Nearly five years later, the Court's message remains unheeded. Primary responsibility for the thoroughly unhelpful briefing falls on Trahanas's counsel, of course, but Trahanas—like all civil litigants—"can hire replacement counsel freely," and is capable of "monitor[ing] how [her] lawyers are performing (or not performing)." *Choice Hotels Int'l., Inc. v. Grover*, 792 F.3d 753, 756 (7th Cir. 2015).

II. Even if Trahanas Has Article III Standing, Summary Judgment on Trahanas's Remaining FMLA Claim Is Appropriate.

If the Court is incorrect and Trahanas has Article III standing to pursue her FMLA claim, the Court concludes, in the alternative, that reconsideration of its opinion denying summary judgment on Trahanas's FMLA retaliation claim against Dr. Schwulst is warranted. Dr. Schwulst moves for reconsideration under Rule 60(b)(6). *See* Mot. Dismiss or Recons. 1. The motion is more correctly characterized as a renewed motion for summary judgment, however, as neither party even raised the issue of Trahanas's entitlement to relief under the FMLA statute in the initial summary judgment briefing. *See, e.g.*, *Perez v. United States*, No. 93 C 2151, 1994 WL 662527, at *2 n.1 (N.D. Ill. Nov. 17, 1994); *Oxman v. WSL-TV*, 651 F. Supp. 652, 652-53 (N.D. Ill. 1986), *rev'd other grounds*, 846 F.2d 448 (7th Cir. 1988). "A party denied summary judgment may renew the motion if he or she has something new to offer, even if it could have been offered sooner." *Oxman*, 651 F. Supp. at 652-53; *see also Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) (explaining that "[a]lthough it is desirable for defendants to present their strongest arguments in their summary judgment motion," the decision to receive a renewed summary judgment motion is within the district court's discretion). A court "may look askance at such a motion if it really says nothing new," but if the motion raises new facts, events, or arguments, "a court has every reason to entertain the motion [because] . . . it allows the possibility that the court and the parties can avoid the time and cost of an unnecessary trial." *Oxman*, 651 F. Supp. at 652-53; *see also Lees v. Carthage College*, 560 F. App'x 614 (7th Cir. 2014) ("[T]here was good reason to consider the new summary-judgment motion; namely, that the other grounds advanced by [the defendant] had never been addressed. . . . The district court did not abuse its discretion by entertaining the new summary-judgment motion."); *Whitford*, 63 F.3d at 530 ("In fact, the district court may reconsider a previously denied summary judgment motion even in the absence of new material presented.")

(citation omitted). The same, familiar standard applies to a renewed motion: summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

To survive summary judgment, a plaintiff must "come forward with evidence from which a jury could conclude that [s]he suffered damages attributable to one of those adverse actions for which the FMLA provides relief." *Hickey v. Protective Life Corp.*, 988 F.3d 380, 388 (7th Cir. 2021). As the defendant notes, only certain types of injuries are cognizable and compensable under the FMLA. The statute authorizes monetary damages for a relatively narrow range of injuries: lost or denied "wages, salary, employment benefits" or similar compensation or, if compensation has not been denied or lost, "actual monetary losses" that are a direct result of the employer's FMLA violation, such as the cost of providing care. 29 U.S.C § 2617(a)(1)(A). Unlike Title VII and the ADA, "FMLA damages don't include emotional distress and punitive damages." *Arrigo v. Link*, 836 F.3d 787, 798 (7th Cir. 2016); *see also, e.g.*, *Bell v. Ill. Dep't of Human Servs.*, No. 19 C 3829, 2019 WL 6726124, at *1 (N.D. Ill. Dec. 11, 2019). The FMLA statute also authorizes appropriate equitable relief, such as employment, reinstatement, and promotion. *Id.* at § 2619(a)(1)(B).

For the reasons already discussed, Trahanas has not presented evidence from which a jury could conclude that she was rejected from medical schools based on Dr. Schwulst's withdrawal and reinstatement of his letter of recommendation. The alleged gaps in Trahanas's memory—as to whether she submitted the requested secondary application materials to Florida Atlantic University, for example—do not create genuine disputes of fact preventing summary judgment. *United States v. Romero*, No. 15 C 5607, 2017 WL 61025, at *3 (N.D. Ill. Jan. 5, 2017); *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (plaintiff's affidavit that she did not remember receiving or seeing a brochure did not raise genuine issue whether the brochure was

distributed to her, in light of defendant's affirmative evidence that she did receive it). Nor does Trahanas's bare denial of the defendants' evidence about AMCAS's policy prohibiting schools' use of recommendation letters from previous cycles. *See, e.g.*, *Hester v. Aircraft Gear Corp.*, No. 89 C 7904, 1990 WL 119498, at *2 n.2 (N.D. Ill. Aug. 10, 1990) ("[The plaintiff] frequently contests facts without offering contradictory evidence capable of raising a question of fact. Her bare denials are allegations and not evidence sufficient to avoid summary judgment."). And at no point in the litigation has Trahanas contended she was not appropriately compensated for her leave, that she was denied due benefits, or that she otherwise incurred actual monetary losses based on Dr. Schwulst's alleged retaliatory actions. As a result, none of the categories of monetary damages outlined in Section 2617 apply. *Kirchner v. Sunbelt Rentals, Inc.*, No., 09 C 7478, 2011 WL 1303997, at *8 (N.D. Ill. Apr. 1, 2011) ("[The plaintiff] has forfeited any claim to the contrary by failing to address h[er] entitlement to such damages in h[er] filing in response to the motion for summary judgment.").

Trahanas has not requested equitable relief in her complaint or in either of her responses to the defendants' summary judgment motions. That is basis enough to reject equitable relief as an available remedy. *See Cianci v. Pettibone Corp.*, 152 F.3d 723, 729 (7th Cir. 1998) (potential availability of equitable relief for FMLA claim not considered in view of defendant's failure to request equitable relief). In any event, none of those forms of relief is appropriate here. An employee has no right to reinstatement under the FMLA "if, at the end of h[er] twelve-week period of leave, [s]he is either unable or unwilling to perform the essential functions of h[er] job." *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008). Trahanas chose not to return to her position in

Dr. Schwulst's laboratory at the end of her FMLA leave in May 2015;[8] she has no right to return to her position now, more than six years later. Though monetary in nature, front pay may be an appropriate equitable remedy "in place of an injunction when reinstatement is not a viable option." *Cloutier v. GoJet Airlines, LLC*, 357 F. Supp. 3d 675, 675 (N.D. Ill. 2019). A front pay award gives an employee the present value of earnings from her old job less the earnings from her present employment. *See Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 449 (7th Cir. 2021). Trahanas has not presented any evidence or argument on this issue, however, and so the Court has no basis to evaluate if (or how much) front pay would be appropriate.

Finally, Trahanas is not entitled to attorneys' fees under Section 2617, which provides that a court "shall . . . allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant" when judgment is awarded to a plaintiff. 29 U.S.C. § 2617(a)(3). To be sure, this award "is not left to the discretion of the district court" and "is more favorable toward prevailing plaintiffs than many other statutory fee-shifting provisions." *Franzen*, 543 F.3d at 430-31. But even if Trahanas is correct and could persuade a jury that Dr. Schwulst's withdrawal of his reference letter constituted FMLA retaliation, her inability to prove that she is entitled to any damages necessitates judgment in favor of Dr. Schwulst—and "an actual 'judgment' in favor of the plaintiff is a necessary triggering event" to the award of attorneys' fees

[8] Trahanas presented no evidence that would allow a jury to conclude that she submitted Dr. Cano's letter (indicating that Trahanas could return to work so long as she was placed under a different supervisor) to someone in the University's human resources department, such that their failure to reassign her in the face of her willingness to return might warrant reinstatement. *See* Pl.'s Resp. to Defs.' Statement of Facts at ¶¶ 61-62 (simply noting her "disagreement" with her own cited deposition testimony that she did not recall giving anybody the letter and with a declaration from a University HR employee that Trahanas's personnel file does not contain Dr. Cano's return to work letter).

under the statute. *Id.* at 430. Even "[a]n interlocutory jury verdict on the issue of liability . . . is insufficient to constitute a judgment awarded to the plaintiff." *Id.* at 431.

In sum, "Section 2617 affords no relief unless the employee has been prejudiced by the [alleged FMLA] violation." *Harrell v. United States Postal Serv.*, 445 F.3d 913, 928 (7th Cir. 2006) (citation omitted). Based on its review of the summary judgment record, this Court concludes that Trahanas was not harmed monetarily by Dr. Schwulst's allegedly retaliatory conduct—and so "§ 2617 provides h[er] no remedy, including equitable relief." *Id.* at 929. Dr. Schwulst is therefore entitled to summary judgment as to Trahanas's FMLA retaliation claim.

## CONCLUSION

As the Court held in its ruling denying Dr. Schwulst summary judgment on Trahanas's FMLA retaliation claim, a jury could reasonably conclude, based on the evidence in the record, that Dr. Schwulst withdrew his original recommendation letter because he was angry at Trahanas's unforeseen extended absence during a busy period for the lab, and that, in doing so, Schwulst violated the FMLA's anti-retaliation provisions. But that's not enough to establish that Trahanas has standing to pursue her claim on its merits; "the violation of a statute, completely divorced from any potential real-world harm" is insufficient to satisfy Article III's injury-in-fact requirement. *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 729 (7th Cir. 2016). And as in *Gracia*, "[t]he summary judgment record contains no showing that [Schwulst's actions] had any impact on [Trahanas]—emotional or otherwise" and "no evidence that [his letters] prevented Trahanas from obtaining a different job[,] . . . that any prospective employer denied her an employment opportunity," or that any medical school denied her admission on that basis. 986 F.3d at 1064. Trahanas has not borne her burden of establishing an Article III injury under the standard applied at summary judgment and, as a result, this Court does not have subject matter jurisdiction to adjudicate Trahanas's claim on the merits. Alternatively, even if Trahanas has adequately

established an injury-in-fact attributable to his conduct at this stage in the litigation, Dr. Schwulst would be entitled to summary judgment on Trahanas's remaining FMLA retaliation claim due to her failure to present evidence establishing her entitlement to any of the categories of relief available under the FMLA. Accordingly, this case is dismissed.

Dated: July 8, 2021

John J. Tharp, Jr.
United States District Judge